In the Matter of the Application of HOSIERY MANUFACTURERS CORPORATION, Appellant, for an Order Directing that Arbitration Proceed between Itself and NATALIE GOLDSTON and Another, Respondents.

First Department, November 2, 1923.

**Arbitration — proceedings to compel arbitration under contract — actions were commenced against petitioner by assignee after maturity of trade acceptances and of contracts of sale — right to arbitrate not waived by interposing answers to actions in which right to arbitrate was asserted and pleaded as defense.**

A buyer does not waive its right to demand that defenses arising on the contract of sale shall be arbitrated as provided in the contract, by interposing answers to several actions brought by an assignee of certain contracts for sale, and of certain trade acceptances which were assigned by the seller after maturity and with notice of the contract, where it appears that although the buyer interposed counterclaims in the action, it also pleaded as a matter of defense in each action the arbitration clause in the contract and asserted its right to have the differences referred to arbitration, and, therefore, actions begun prior to the petition to compel arbitration should be stayed and the dispute arising between the buyer and the seller should be submitted to arbitration under the terms of the contract.

APPEAL by Hosiery Manufacturers Corporation from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of July, 1923, denying its motion to compel the respondents, to proceed to arbitration pursuant to the terms of certain contracts and for the stay of certain actions in which the respondent Natalie Goldston is plaintiff and the appellant is defendant, as resettled by an order entered in said clerk's office on the 16th day of August, 1923, and also from an order entered in said clerk's office on the 20th day of July, 1923, denying its motion to resettle the first mentioned order.

*Erwin, Fried & Czaki [Frederick M. Czaki* of counsel; *Marion Erwin* with him on the brief], for the appellant.

*Tanzer & Lane [Charles J. Lane* of counsel; *Warren J. Bloom* with him on the brief], for the respondents.

DOWLING, J.:

The facts upon which the application for a compulsory arbitration herein is based, are largely a matter of record, and are not in dispute. They are as follows: The petitioner, a New York corporation, a jobber in hosiery, as buyer, and the respondent West Branch Knitting Company, a corporation of Pennsylvania, a manufacturer of hosiery, as seller, had been in contract relations as such with each other since November 21, 1921, pursuant to which various transactions were in progress when on April 29, 1922, a new contract for the purchase and sale of additional merchandise consisting of hosiery to be manufactured by the seller was entered into, which, among other things, provided substantially that all disputes arising thereunder should be settled by arbitration in New York city, pursuant to the New York Arbitration Law by each party designating, upon eight days' notice and demand by the other, a disinterested person to act as arbitrator, the two so designated to appoint and designate an umpire, and that should either party fail to so designate an arbitrator the one so designating an arbitrator had the right to at once compel the party in default to do so as provided by the Arbitration Law. There are two other clauses of the contract conferring jurisdiction upon the courts of this State for the purposes of the enforcement of the provisions of the arbitration clause and by which each party designated as their agent the then acting secretary of the New York Chamber of Commerce to receive service of all notice, process, pleading and judgment, etc.

The contract also provides that the petitioner might make a preliminary examination of the merchandise, the subject-matter of the contract, at the port of New York prior to its shipment (the merchandise being purchased for export) in order to determine whether it met contract requirements and, in case it did not, the petitioner might reject it, or do whatever was necessary to make it conform, and if such preliminary inspection was not made at the port of New York and upon arrival abroad it was ascertained, as the contract provided, that the merchandise failed to conform to sample or to the terms of the contract the petitioner had the right to deduct the damages, to be ascertained as the contract provided, from any payment then due or to become due by it to the respondent West Branch Company, or by making a

direct claim therefor against the latter which it thereby agreed to pay.

On November 21, 1921, another written contract had been entered into between the same parties for the purchase and sale of merchandise consisting of hosiery which was thereafter and on December 28, 1921, modified by another written contract increasing the quantity of merchandise purchased, both contracts containing the provision with reference to examination and inspection and the rights of the petitioner arising therefrom, and that the contracts were to be construed according to the laws of the State of New York.

On October 3, 1922, November 8, 1922, November 17, 1922, and November 20, 1922, various other written contracts, some of which were subsequently modified by written contracts, were entered into between the parties for the sale of merchandise consisting of hosiery, the modifications simply increasing the quantities purchased. These contracts of October third, November eighth, seventeenth and twentieth, and their modifications, contained the same clauses for arbitration and that the rights of the parties were to be governed by the laws of the State of New York and, as well, the provision in reference to inspection and examination at the port of New York, or at the point of foreign destination, as were contained in the contract of April 29, 1922.

On and prior to November 11, 1922, disputes had arisen and were pending undisposed of between the petitioner and the respondent West Branch Company with reference to the performance by the respondent West Branch Company of the contracts of November 21, 1921, and April 29, 1922, in that petitioner claimed that the respondent West Branch Company had refused and neglected to deliver all of the merchandise to be delivered when and as provided for; that the merchandise which had been delivered was not of the kind agreed to be manufactured, sold and delivered, and that the petitioner had been damaged in large sums which it had and claimed to have the right to offset against any claim or claims asserted by the respondent West Branch Company represented by trade acceptances or otherwise.

On November 11, 1922, the respondent West Branch Company drew three trade acceptances, all dated that day, to its own order, due respectively December 27, 1922, January 18, 1923, and February 16, 1923, which the petitioner accepted on or about November 11, 1922. Each of these trade acceptances stated that the obligations of the acceptor arose out of the purchase of goods from the drawer, and they were drawn and accepted and represented deliveries of merchandise made by the respondent West Branch Company

to the petitioner partly in alleged performance of the contract of April 29, and partly in alleged performance of the contract of November 21, 1922.  These trade acceptances were subject to all of the terms and provisions of the contracts referred to and were drawn and accepted without any adjustment having been made of the differences then existing between the parties.

At the respective due dates of these trade acceptances they were presented for payment by the respondent West Branch Company and payment was refused, each being indorsed by petitioner: "Payment ordered suspended until our differences are taken care of."  At this time, in addition to the disputes which had arisen with reference to the performance of the contracts in respect to the deliveries of merchandise for which these trade acceptances had been given, other disputes had arisen and were pending undisposed of between the respondent West Branch Company and petitioner, growing out of the former's failure to perform the other contracts for the purchase and sale of merchandise in respect of which either defective deliveries had been made or no deliveries made at all.

After the dishonor of these trade acceptances and after petitioner's claims had arisen by reason of the respondent West Branch Company's failure to perform its several contracts, and with notice and knowledge on the part of the respondent Natalie Goldston of the fact of the existence of such disputes and the dishonor of said trade acceptances and the failure of the respondent West Branch Company to perform its several contracts, the latter assigned to her these three trade acceptances, and transferred several other alleged causes of action growing out of the delivery by the respondent West Branch Company to the petitioner of certain merchandise delivered pursuant to said several contracts, and in one instance merchandise delivered by the respondent West Branch Company to the petitioner on consignment for sale for its account.

The respondent Goldston thereupon on January 30, 1923, as such assignee and transferee instituted an action against petitioner in this court, designated No. 1, consisting of two counts on the two trade acceptances due respectively December 27, 1922, and January 18, 1923, to recover the sum of $3,042.25 and $2,968.38; and on the same day instituted another action in this court against the petitioner designated No. 2, on two counts, one to recover the sum of $10,509.14 for merchandise alleged to have been sold and delivered by the respondent West Branch Company to the petitioner, and the other on an alleged account stated arising out

27

of the sale and delivery of the same merchandise and for the same sum of money.

On February 14, 1923, respondent Goldston, as such alleged assignee and transferee, instituted another action in this court against petitioner, designated No. 3, to recover the sum of $2,925 for the delivery on consignment of certain merchandise which merchandise or the price thereof was alleged to have been wrongfully detained and converted; and on February 27, 1923, instituted against petitioner the last action, designated No. 4, to recover $2,560.89 upon the trade acceptance due February 16, 1923. All these actions, except No. 3, were to recover upon trade acceptances given or open accounts created by reason of deliveries made in whole or in part under the several contracts before referred to.

On March 12, 1923, the petitioner served an answer to the complaint in action No. 1. On March 19, 1923, it served its answer in action No. 2. On March 23, 1923, it served its answer in action No. 3, and on March 26, 1923, it served its answer in action No. 4, and to each and all of the actions it interposed, in addition to certain affirmative defenses, nine separate counterclaims alleging damages aggregating $161,100, growing out of the respondent West Branch Company's breach of the several contracts.

To actions Nos. 1 and 4 on the trade acceptances, and to action No. 2 (which was for the price of goods sold and for an account stated) petitioner interposed an affirmative defense that the causes of action therein and as well the several counterclaims interposed by the answers arose in whole or in part by reason of the purchase of merchandise by petitioner from the respondent West Branch Company under said several contracts which contained the provision that all disputes arising thereunder should be settled by arbitration, as in said contracts provided; that disputes had arisen and were pending undisposed of prior to and at the time of the transfer by the respondent West Branch Company to the respondent Goldston of the claims thus asserted, and that neither of the respondents had, pursuant to the provisions for arbitration of such disputes, proceeded to settle the same as the contracts provided; that said disputes involved issues raised in said actions, and more particularly alleged in the counterclaims thereto, which were referable to arbitration under said contracts, and prayed separately that the trial of each of said actions be stayed until such arbitration had been had in accordance with said agreements.

The prayers for relief in each of the actions Nos. 1, 2 and 4 were: *First*, that the trial of the action be stayed until arbitration was had as in said contracts more particularly provided; *second*, that the complaint be dismissed; *third*, that the defendant have

judgment against the respondent West Branch Company for the sum of $161,100, with interest, besides the costs and disbursements of the action, and for such other and further relief as to the court may seem just and proper. The defense, with reference to the arbitration clause contained in these contracts, was not interposed in the original answer to the complaint in action No. 3.

On April 30, 1923, the respondent Goldston served replies to the nine counterclaims respectively alleged in the answers interposed to the complaints in these four actions. These replies, also containing certain affirmative defenses, are practically identical in each case and admit, among other things, that she took the trade acceptances sued on after maturity and with notice of dishonor.

On May 11, 1923, petitioner, pursuant to the provisions for arbitration in these several contracts, made due submission to arbitration, and gave notice to the respondent West Branch Company and to the then acting secretary of the New York Chamber of Commerce for it, and to the respondent Goldston, that petitioner submitted all disputes arising under said several contracts, as in said actions and the counterclaims more particularly alleged, designating its arbitrator and calling upon the respondents within eight days from the date of said notice to designate and appoint an arbitrator.

More than eight days having elapsed and each of the respondents having failed to designate and appoint an arbitrator, the petitioner served supplemental amended answers to the complaints in all four actions, before its time to serve amended answers had expired, alleging the making of said submission to arbitration, the service thereof and of said notice and demand, and the failure and neglect of the respondents to appoint an arbitrator. These supplemental amended answers in actions Nos. 1, 2 and 4 are in all respects identical with the original answers, except that they allege the facts of the making of the submission, which occurred subsequent to service of the original answers, the default of the respondents to appoint an arbitrator, and make the prayer for judgment on the counterclaims expressly in alternative form and subject to the prayer that the trial of the actions be stayed pending arbitration; and in action No. 3, the defense based upon the arbitration clause in these contracts not having been alleged in the original answer, a further defense was interposed by said supplemental amended answer based thereon and an alternative prayer for relief that the action be stayed was made.

These supplemental amended answers having been interposed without first obtaining an order of the court granting leave so

to do, the plaintiff, in those actions (respondent Goldston herein) moved that they be stricken out. This was granted. Contemporaneously petitioner was granted leave to serve supplemental answers *nunc pro tunc* as of the date (May 21, 1923) of service of the supplemental amended answer in each of said four actions. These supplemental answers are identical in actions Nos. 1, 2 and 4 and in action No. 3 is alleged the affirmative defense based upon these arbitration clauses as it was contained in the supplemental amended answer interposed in that action but stricken out. To each of the supplemental answers thus served by leave of court, was annexed as an exhibit the notice and submission to arbitration and demand upon the respondents to appoint an arbitrator, which is the same exhibit annexed to the petition in this proceeding and made a part thereof.

In this state of the matter this proceeding was instituted on petition verified June 14, 1923, and, in lieu of service similar to personal service of a summons, as the Arbitration Law (§ 3) provides, because of the non-residence of the respondent corporation, an order to show cause was obtained requiring the respondents to show cause why an order should not be made directing, *first*, that the respondents submit to and proceed with arbitration pursuant to the submission, notice and demand theretofore served upon them by petitioner, and in the manner as provided for by the contracts for arbitration; *second*, that the actions instituted and pending in this court by the respondent Goldston, designated respectively 1 to 4, inclusive, together with all proceedings therein, and the trial be stayed until such arbitration had been had in accordance with the terms of said contracts and directing service of said order to show cause and petition as therein provided. This order to show cause was duly served as therein provided.

Upon this state of facts the learned court at Special Term has held that the petitioner had abandoned and waived its right to demand arbitration under the contract, and because of its having elected to answer in the four actions brought against it, and to put in a counterclaim for affirmative relief, it cannot now demand that the trial of the actions be stayed and the dispute be arbitrated. He, therefore, denied the motion that the arbitration be directed to proceed. In this I believe he was in error.

The learned court relied upon the case of *Matter of Zimmerman* v. *Cohen* (236 N. Y. 15). But in that case as the opinion of this court shows (204 App. Div. 377), the answer of the defendant did not set up his right to arbitration, nor in any way refer to the agreement to arbitrate by way of defense or otherwise. The Court of Appeals, speaking through Judge CRANE, referred to the fact that

the defendant, instead of asking the court to enforce arbitration and to stay all proceedings in the action, had answered, setting up a separate defense and counterclaim, had cross-noticed the case for trial and had obtained the issuance of a commission to take testimony in China to establish his defense and counterclaim. "Upon these facts," Judge CRANE said (p. 19), "whatever right the defendant may have had under his contract and the Arbitration Law to enforce arbitration he deliberately waived; he chose and elected to proceed by an action in court for the determination of the respective claims."

But in the case under consideration the appellant has consistently and repeatedly given notice of its intention to insist upon the contractual obligation to resort to arbitration. Thus in action No. 1 the agreement to arbitrate is set forth at length in the third, sixth, seventh and eighth separate defenses. As a twelfth separate defense, defendant pleaded: "That each and both of the said trade acceptances set out in the complaint herein were issued by the said West Branch Knitting Company and accepted and delivered by the defendant to said West Branch Knitting Co. in payment, in whole or in part, of certain goods, wares and merchandise sold by said West Branch Knitting Co. and purchased by the defendant, under and in pursuance of a certain contract, made and entered into by and between this defendant and the said West Branch Knitting Co., dated on or about April 29, 1922, which said contract is more particularly and in detail set out in paragraph numbered '9' of this answer, and which, among other things, contained the provision that all disputes arising under said contract shall be settled by arbitration, as more particularly in said contract provided. That all of the allegations of paragraph 9th of this answer are repeated as though herein set out in extenso.

"That disputes had arisen between this defendant and said West Branch Knitting Company and were pending undisposed of between said West Branch Knitting Company and this defendant prior to and at the time when said West Branch Knitting Company transferred and assigned to the plaintiff its claims on said trade acceptances alleged in the complaint; that neither said West Branch Knitting Company nor this plaintiff have, pursuant to said provision for said arbitration of said disputes, proceeded to settle the same as by said contract provided; and the disputes between the said West Branch Knitting Company and this defendant involve issues raised by the complaint and more particularly alleged in the several counterclaims in this answer contained and are referable to arbitration under said contract as aforesaid, wherefore this

defendant prays that the trial of the above entitled action be stayed until such arbitration has been had in accordance with the terms of said agreement as aforesaid."

The first prayer for relief is:

"*First.* That the trial of this action be stayed until such arbitration has been had in accordance with the terms of the agreements between the defendant and the West Branch Knitting Co. as in said contracts more particularly provided."

Precisely similar allegations are contained in the original answers in actions Nos. 2 and 4.

In action No. 3 the original answer set up the agreement to arbitrate as a part of the second, fifth, sixth, seventh and tenth separate defenses, but asked judgment only that the complaint be dismissed and for judgment on its counterclaim.

In its supplemental answers in all four actions after reaverring the facts set forth in the original answer, defendant prayed for judgment:

"*First.* That the trial of this action be stayed until such arbitration has been had in accordance with the terms of the agreements between the defendant and the West Branch Knitting Co. as in said contracts more particularly provided.

"*Second.* And in the alternative ,and subject to the prayer of this defendant that the trial of this action be stayed as aforesaid, that the complaint be dismissed and that the defendant have judgment against the plaintiff and against the said West Branch Knitting Co. for the sum of $161,000 with interest, together with the costs and disbursements of this action, and that the plaintiff have such other and further relief as to this Court may seem just and proper."

The only other case relied upon by the learned court at Special Term is *Alsens A. P. C. Works* v. *Degnon Cont. Co.* (222 N. Y. 34), which has to do with what constitutes a waiver and is not determinative of the question under discussion.

I am of the opinion that upon the facts in this case the appellant never waived or abandoned its right to insist upon a submission to arbitration. It asserted that right and pleaded its existence in its original and supplemental answers in all four actions. It specifically asked for relief by a stay of the trial in the original answers in three of the actions and in its supplemental answers in all four thereof. It has never taken a step, nor done an act, which indicated a purpose to abandon or waive its right to an arbitration. It has never surrendered that right.

The order, as resettled, appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion

granted, with ten dollars costs, and the appeal from the order denying the motion to resettle should be dismissed.

CLARKE, P. J., SMITH, McAVOY and MARTIN, JJ., concur.

Order of July 16, 1923, as resettled by order of August 16, 1923, reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Appeal from order of July 20, 1923, dismissed, without costs.